EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRANDON D. FOX (Cal. Bar No. 290409)
Chief, Public Corruption and Civil Rights Section
Assistant United States Attorney
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
Assistant United States Attorney
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0284/4443
     Facsimile: (213) 894-7631
     E-mail:    brandon.fox@usdoj.gov
                lindsey.dotson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 13-573(A)-GW-2 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING JASON BRANUM |
| v. | |
| JASON BRANUM, | Hearing Date: September 26, 2016<br>Hearing Time: 8:00 a.m.<br>Location:    Courtroom of the |
| Defendant. | Hon. George Wu |

Jason Branum was a deputy sheriff who learned that a mentally-ill inmate had mouthed off to his custody assistant. Defendant Branum decided to gather his fellow deputies and teach the inmate a lesson: disrespecting Sheriff's Department employees would be met with punishment. Branum instigated the incident and has shown no remorse. This Court should sentence defendant to 36 months in prison, which is within Branum's Guidelines range.

## I. HISTORY

In November 2013, defendant Branum was charged with three offenses in connection with his abuse of an inmate while working at the Los Angeles County Twin Towers Correctional Facility. On May 16, 2016, a jury convicted defendant of Counts Four, Five and Six of the Superseding Indictment: (1) conspiring to violate Inmate Philip Jones's Constitutional rights to be free from excessive force and false prosecution by one acting under color of law; (2) using excessive and unreasonable force against Inmate Jones; and (3) making false records to cover up his offenses.

## II. STATEMENT OF FACTS

On March 22, 2010, a custody assistant informed defendant Branum that Inmate Jones had mouthed off to her. Branum decided that he would take care of the inmate because "no one disrespects my CA." Branum informed other deputies of what occurred. His co-conspirator, Bryan Brunsting, ordered his deputy-trainee Joshua Sather to come to the sixth floor of Twin Tower's Correctional Facility. When Sather arrived in the module, Brunsting, Branum, and other deputies were standing outside of the inmate visiting area. Brunsting told Sather that Jones was not where he was supposed to be and that they were going to teach Jones a lesson.

Brunsting and Branum asked the custody assistant to open the visiting door. They directed Jones, an inmate with mental health issues, toward the interconnect hallway, which was in the opposite direction of Jones's cell. Jones complied. As Jones approached the interconnect hallway, the deputies asked the custody assistant to unlock and open the interconnect door. The deputies led Jones into the interconnect hallway. Realizing what was happening, Jones turned

around and made a comment that showed he knew he was being set up to be physically assaulted. Jones ran toward the locked door at the end of the hallway. The deputies tackled Jones and began to punch and kick him. The custody assistant listened in to what was occurring in the hallway. She heard Branum say, again, "no one disrespects my CA."

Among the notable excessive force was Brunsting kicking Jones in the groin area and Branum using OC spray on Jones. A deputy instructed Sather to wait to handcuff Jones until other deputies arrived. By not having Sather handcuff Jones right away, it gave deputies, including Brunsting and Branum, the ability to continue to assault Jones under the guise that they were trying to control a purportedly resisting Jones who was supposedly refusing to be handcuffed (he wasn't).

After the incident, Brunsting, Branum, Sather and the other deputies went into the custody assistant's booth and discussed what to write in their incident reports. They determined that Sather would be the lead writer of the reports. The next day, Brunsting and Branum wrote false reports. Brunsting also dictated to Sather what to write in his report. The deputies concocted a story in which they claimed they had directed Jones to go back to his cell (they hadn't), Jones instead went down the interconnect hallway in violation of their orders (he was directed there by the deputies), Jones mouthed off at the deputies and took a swing at Sather (he did neither). The reports also falsely stated that Jones violently swung his arms in an attempt to strike Brunsting and Sather.

The false reports had the effects Brunsting and Branum intended. They caused Jones to be referred for further investigation and

possible prosecution for supposedly assaulting the deputies. Additionally, they allowed Brunsting and Branum to explain their force on Jones in a way that made their assault seem reasonable. As a result, Brunsting and Branum avoided any punishment – criminally or administratively – until they were charged by a federal grand jury in this case.

The assault and false reports, however, had a different effect on Sather. He resigned because he did not join the Sheriff's Department to commit abuse and to lie in reports.[1]

**III. ARGUMENT**

The pre-sentence report ("PSR") accurately described the offense and the Sentencing Guidelines application. The government is seeking a sentence close to the mid-range of the Guidelines based on the § 3553 factors.

    **A.   Section 3553 Factors**

          1.   <u>The Nature and Circumstances of the Offense, the Seriousness of the Offense, and Just Punishment</u>

Defendant instigated a pre-meditated assault on an inmate with mental health issues. He and other deputies involved in the incident abused their position to harm an inmate he was supposed to protect.

The incident also caused the abrupt end to a promising and short career. Sather entered the Sheriff's Department for all the right

---

[1] The Sheriff's Department's Internal Affairs Bureau did not make any adverse findings against Branum, despite the fact that Sather had informed the Sheriff's Department of the abuse of the Inmate Jones. Although the prosecutors assigned to this case have not been exposed to Branum's statement to Internal Affairs, it is likely that he lied about the incident in order to conceal his conduct.

4

reasons, but quickly resigned for all the wrong ones. Defendant's crimes hurt the public and Sheriff's Department.

Law enforcement generally has also been harmed by defendant's crimes. Many in the public impute excessive force by a law enforcement officer to all law enforcement officers. Defendant has tarnished not only his badge with the Sheriff's Department, but also the badges of every law enforcement officer.

### 2. History and Characteristics of the Defendant

Defendant's service in the military certainly is a mitigating factor. From the information the U.S. Attorney's Office has received, he appears to have served with honor, dignity, and bravery.

The PSR reflects injuries and health issues that purportedly occurred as a result of his military experience. (PSR at ¶¶ 76-78.) These issues, however, do not appear to be consistent with what defendant reported to military when he left or to the Sheriff's Department when he was hired.[2]

Defendant's military records show he earned the "Physical Fitness Badge of Excellence" in 2006. (Ex. A at 2.)[3] That year, he filled out a form with the Army stating that he was not disabled. (Ex. B at 2.)

Defendant was evaluated for employment by the Sheriff's Department in late 2007. (Ex. C at 1.) In order to be hired by the

---

[2] The government has subpoenaed additional records from Los Angeles County regarding defendant's health and will file them with the Court when the government receives them. It could be that these additional documents will show that defendant did disclose these purported issues to the County.

[3] The government is filing these exhibits under seal because they are part of defendant's personnel record, reflect personal identifying information of defendant and others, and reflect health evaluations of defendant and others.

5

1 Sheriff's Department, defendant had to pass two phases of a medical
2 examination.  (Id. at 1, ¶ 6.)  Defendant ultimately received a grade
3 of "A" for his health.  (Id. at 3, 4.)
4    His evaluations within the Sheriff's Department from November
5 2010 to October 2011 state that defendant wanted to eventually be
6 transferred to the Sheriff's Department's Special Enforcement Bureau,
7 which is its version of SWAT.  (Id. at 2.)  The evaluations reflect
8 that defendant was an active participant in department sponsored
9 sporting events such as weight lifting competitions and Emergency
10 Response Team competitions.  (Id.)  From these accounts, defendant
11 appeared to be healthy in every respect.

        3.    <u>Promote Respect for the Law and Afford Adequate Deterrence</u>

14    A sentence that provides for specific and general deterrence is
15 necessary.  Instead of upholding the law, defendant used his position
16 of authority not only to abuse Inmate Jones, but also to cover up his
17 offense.  He involved many deputies in the process, including those
18 new to law enforcement.  Defendant's actions show he believed he was
19 above the law.  Defendant has shown no remorse.
20    In terms of general deterrence, defendant is part of a series of
21 cases that has received the attention of the public and of the law
22 enforcement community.  It presents an opportunity to show that no
23 one is above the law, that the Court will take acts of abuse
24 seriously, and that efforts to cover up crimes through lies will not
25 be tolerated.

### 4. Avoiding Unwanted Disparity

The need to avoid unwanted disparity shows that this Court should sentence defendant to a sentence within the Guidelines range of 33-41 months.

This is the third case in which deputies were charged with abusing people in the Los Angeles County jails. In United States v. Gonzalez, et al., CR No. 13-574-GHK, the defendants were convicted of the exact same violations as defendants here for beating a visitor to Men's Central jail and covering up their offenses. Three defendants went to trial and received the following sentences:[4]

- Sergeant Eric Gonzalez – 96 months
- Deputy Fernando Luviano – 84 months
- Deputy Sussie Ayala – 72 months

The Gonzalez case was similar in many respects. For example, after abusing the victim, the defendants attempted to have the victim charged with crimes. Further, the defendants wrote false reports to cover up their conduct.

In some ways, the Gonzalez offenses were more aggravating. The defendants beat the victim while he was handcuffed. Also, the victim suffered injuries that were more extensive than those suffered by the inmates abused by Brunsting. Additionally, the victim was charged with crimes, which were only dismissed much later.

In other ways, defendant's conduct is more aggravating. His victims had mental health issues. Further, his abuse was pre-meditated in that he gathered deputies outside of the visiting area, knew where he would take Inmate Jones, and led Jones down a hallway

---

[4] Two defendants cooperated and are awaiting sentence.

7

where the only witnesses would be the very deputies involved in the beating.  Overall, the Gonzalez sentences are a good guide for the Court.

The other case in which deputies were charged with excessive force was United States v. Aguiar and Ramirez, CR No. 14-69-BRO.  The defendants in that case went to trial after being charged with conspiring to violate an inmate's civil rights, violating an inmate's civil rights, and making false reports.  They were convicted of the § 1519 offense and acquitted on the conspiracy charge, but the jury could not reach a verdict on the excessive force count.  The defendants were sentenced to terms of 18 months and 13 months.

Branum's conduct is more aggravating than that of the Aguiar defendants.  Along with the conviction on the § 1519 charge, the jury convicted defendant of conspiring to violate Inmate Jones's civil rights and physically assaulting Inmate Jones.

In addition to Gonzalez and Aguiar, the government has prosecuted a series of cases involving the Sheriff's Department's obstruction of a grand jury investigation of civil rights abuses and corruption in the jails.  Nine defendants have been convicted and sentenced to terms of imprisonment ranging from 18 months to five years as follows:

- Deputy James Sexton – 18 months
- Deputy Gerard Smith – 21 months
- Deputy Mickey Manzo – 24 months
- Sergeant Maricela Long – 24 months
- Sergeant Scott Craig – 33 months
- Lieutenant Gregory Thompson – 37 months
- Lieutenant Stephen Leavins – 41 months

- Undersheriff Paul Tanaka – 60 months

Two additional defendants, Captain William "Tom" Carey and Sheriff Leroy Baca, have yet to be sentenced.  Carey has pled guilty pursuant to a cooperation agreement.  Baca is set for trial on December 6, 2016.

The obstructive acts in those cases included hiding an inmate-informant from the federal government, tampering with witnesses, and threatening to arrest the FBI's lead agent to try to intimidate her. While the sentences in the obstruction cases show how seriously that conduct has been taken, none of those defendants physically abused an inmate.  In terms of unwanted disparity, the Court should consider all of these sentences.  Somewhere between the sentences for the Gonzalez defendants and the Aguiar defendants will avoid unwarranted disparity.

**IV.   CONCLUSION**

Given his role as instigator of the abuse and his nearly successful efforts to cover the crimes up through false reports and lies, the Court should sentence defendant to 36 months in prison.

September 12, 2016                    Respectfully submitted,

                                      EILEEN M. DECKER
                                      United States Attorney

                                      LAWRENCE S. MIDDLETON
                                      Assistant United States Attorney
                                      Chief, Criminal Division


                                        /s/ Brandon D. Fox
                                      BRANDON D. FOX
                                      LINDSEY GREER DOTSON
                                      Assistant United States Attorneys

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

9